## STATE v. WINE.

1. PRACTICE—JURIES.—In absence of facts showing prejudice to appellant, judgment will not be reversed, because Judge permitted letter to be handed juror during trial without examining it, or asking consent of counsel.
2. CHARGE excepted to not objectionable when considered in connection with whole charge.
2. IBID.—Failure to charge propositions of law, handed up not as requests, but as suggestions to the Court as to what the law of the case is, is not error.

Before KLUGH, J., Orangeburg, 1899. Affirmed.

Indictment for murder against Warby Wine and Major

Green. From verdict of guilty and sentence, defendants appeal.

*Messrs. Wolfe & Connor,* for appellants, cite: *As to conviction on circumstantial evidence:* 20 S. C., 581; 25 S. C., 15. *Judge must charge all law applicable to case:* 54 S. C., 192. *Court will pass on all errors in record in such case, whether excepted to or not:* 12 S. C., 89.

*Solicitor Jervey,* contra, cites: *As to when malice is implied:* 2 Rich., 179; 34 S. C., 120; 36 S. C., 487; 55 S. C., 240. *When several are engaged in murder, it is immaterial which made the blow:* 1 McC., 285; 2 N. & McC., 312; 2 Bail., 66; 4 Rich., 260; 14 Rich., 215. *Judge may allow jury to disperse during progress of trial:* 1 Bail., 651; 2 Bail., 565; 3 Strob., 33; 9 Rich., 133; 13 S. C., 459; 26 S. C., 125; 26 S. C., 117.

June 28, 1900. The opinion of the Court was delivered by

MR. JUSTICE GARY. The following preliminary statement is set out in the argument of the appellant's attorneys: "On the night of December 17th, 1898, one H. H. Pauling was found intoxicated and wounded near the town of Fort Motte, in Orangeburg County. Pauling died from his wound the next day. Warby Wine, Major Green, Dick Duncan and John Taylor were arrested and lodged in jail, charged with the homicide. At the trial, the solicitor elected to put only Wine and Green on trial for murder (Duncan and Taylor having been since released). The theory of the State was that Wine, Green, Duncan and Taylor had conspired together to rob Paulding; and that during the consummation of the robbery, Wine shot, killing Pauling, and that hence all were guilty of murder. The theory of the defense was: 1. That Pauling, deeply intoxicated, was making his way to the house of Jessie Parker; but on account of his intoxication failed to reach the house, and fell and lay on the ground, where he was afterwards shot. 2. That Wine, Green, Duncan and Taylor, also more or less

intoxicated, going to their homes, passed near where Pauling lay; that some one of the party seeing the object (Pauling) on the ground, called attention to it; whereupon Wine shot at it, with the intention of scaring it, or making it move, in order that they might know what it was. 3. That when Wine shot, Pauling made some exclamation, or it became known to these men in some way that it was a man instead of an animal. 4. That even if Pauling had been robbed, as charged by the State, such robbery was committed after the firing of the shot, and that the robbery was not the ulterior design, nor was there any connection between the robbery, if there was such, and the firing of the shot. 5. That the possession of Pauling's watch by Green could be accounted for and explained by several more reasonable hypotheses than a conspiracy to rob and murder, as charged by the State." The defendants were convicted; a new trial was refused by Circuit Judge, and they appealed.

The first exception is as follows: "For that the juror, C. N. Zeigler, who resides in or near the community where the homicide occurred, was allowed, during the trial, and while the evidence was being heard, to receive a letter or some written communication." It seems the facts are as follows: some one handed a letter to the deputy clerk, addressed to Zeigler, one of the jurors. Upon the Judge's attention being called to it, he directed that the letter be handed to the juror. It was not examined by the presiding Judge, nor did he ask counsel if there was any objection to allowing the juror to receive the letter. The conduct of a trial must in a great measure be left to the sound discretion of the presiding Judge. There are no facts in this case tending to show that the appellants were prejudiced by the act of the Circuit Judge. The exception is, therefore, overruled.

The second, third and fourth exceptions are as follows: "2. For that the Court erred in charging the jury: 'And so in this case, if the evidence satisfies you that the defendants, or either of them, took the life of H. H. Pauling intentionally, without just cause or excuse, it constitutes a malicious

killing, or a killing with malice aforethought, which the law holds to be murder.'    3. For that the Court erred in charging the jury: 'The killing of a person for the purpose of committing an unlawful act, the other unlawful act being the ulterior design and moving cause, is murder.'    4. For that the Court erred in charging the jury: 'And so if a person shoot at an object, supposing it to be some article of property and not a person, and it turns out that he is mistaken, unless he is grossly negligent and careless in the doing of that act, the law would not hold it to be more than manslaughter.' " These exceptions fail to specify the particular errors which the appellants desire to bring to the attention of the Court.    But waiving this objection, these exceptions, when considered in connection with the other parts of the charge, will be found to be free from error.

The fifth, sixth, seventh, eighth and ninth exceptions are as follows: "5. For that the Court erred in refusing to charge the jury: 'Before the jury can convict Green of any offense in this case, the State must prove beyond a reasonable doubt and to your satisfaction, that Green and Wine conspired together to rob Pauling, and while both of them were actually engaged in the very act of robbery, Wine fired the fatal shot.'    6. For that the Court erred in refusing to charge the jury: 'There must have been an actual agreement, intention or conspiracy, either expressed or implied, between Green and Wine to rob Pauling previous to the firing of the fatal shot, else the jury cannot convict Green in this case.'    7. For that the Court erred in not charging the jury, as requested: 'It is absolutely necessary that there be a community of intention or interest, proven beyond a reasonable doubt by the State, between Green and Wine to rob Pauling, during the consummation of which Wine fired the fatal shot, before the jury can convict Green of either murder or manslaughter in this case.' 8. For that the Court erred in refusing to charge the jury: 'If Green and Wine acted separately and distinctly in the

7—58

commission of the robbery or the shooting, or either, then
each must answer separately and distinctly for his offense.
Wine must answer for the shooting, and Green for the rob-
bery, if there was such.' 9. For that the Court erred in
refusing to charge the jury : 'Finding of stolen property is no
legal presumption of guilt of murder or manslaughter.' "
The presiding Judge at the conclusion of his charge used the
following language with reference to the appellants' attor-
neys : "They have submitted to the Court some propositions
of law, not with the request that I charge them to you, but
simply as suggestions to the Court as to what the law is, and
some of them I deem it proper for me to read to you as being
law applicable to this case in some of its aspects, and which
you may apply to the facts if you should take the view of the
facts which these propositions contemplate." The presiding
Judge was not requested to charge the propositions of law
just mentioned, and as he charged substantially the law ap-
plicable to the case, the exceptions cannot be sustained.

It is the judgment of this Court, that the judgment of the
Circuit Court be affirmed, and the case remanded to that
Court for the purpose of having another day assigned for
the execution of the sentence.